## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

QUONTERIOUS TOLES,

      Plaintiff,

   v.

RONNIE SHUEMAKE; FREDDY DAVIS;
and SERGEANT MENDEZ,

      Defendants.

CIVIL ACTION NO.: 6:18-cv-96

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this 42 U.S.C. § 1983 action while incarcerated at Georgia State Prison in Reidsville, Georgia, challenging certain conditions of his confinement.  Doc. 1 at 3.  For the reasons below, I **RECOMMEND** the Court **DISMISS** Plaintiff's retaliation claim against Defendant Mendez and **DENY** Plaintiff *in forma pauperis status* on appeal.  I **RECOMMEND** the Court **DISMISS** Plaintiff's claims for money damages against all Defendants in their official capacities.  However, Plaintiff's request for release from administrative confinement shall proceed against Defendants in their official capacities.  Additionally, I **FIND** the following claims shall proceed against Defendants in their individual capacities: (1) Plaintiff's excessive force claims against Defendants Shuemake and Mendez; (2) Plaintiff's failure to intervene claim against Defendant Davis; and (3) Plaintiff's deliberate indifference claim against Defendants Shuemake and Davis.  Consequently, a copy of Plaintiff's Complaint, doc. 1, Amended Complaint, doc. 9, and a copy of this Order shall be served upon Defendants Shuemake, Davis, and Mendez by the United States Marshal without prepayment of cost.

## BACKGROUND[1]

Plaintiff filed this action against Defendants Shuemake and Davis on September 27, 2018.  Doc. 1.  On December 19, 2018, Plaintiff moved to add Defendant Mendez as a party.  Doc. 7.  The Court granted Plaintiff's motion but deferred frivolity review and ordered Plaintiff to amend his Complaint.  Doc. 8.  Plaintiff filed his Amended Complaint on June 14, 2019.  Doc. 9.  In his Amended Complaint, Plaintiff brings the following claims: (1) excessive force against Defendants Shuemake and Mendez; (2) deliberate indifference to medical risk against Defendants Shuemake and Davis; (3) failure to intervene against Defendant Davis; and (4) retaliation against Defendant Mendez.  Id.

On June 25, 2018, Plaintiff experienced an epileptic seizure while in his cell (cell number 25 in building G2).  Id. at 3–4.  Defendant Shuemake and Defendant Davis approached the door to Plaintiff's cell.  Id.  Though Plaintiff was experiencing a seizure, Defendants Shuemake and Davis ordered him to come to the door and "cuff up."  Id.  Plaintiff's cellmate tried to help Plaintiff stand.  Id.  Plaintiff contends that Defendant Shuemake then began to spray "a tactical agent" into the cell.  Id.  Defendant Davis stood next to Defendant Shuemake and "passed [him] more spray . . . ."  Id.  Though Plaintiff was "in an unaware state at first," he eventually noticed the presence of the chemical spray in his cell.  Id.  He started to scream that he had not done anything wrong and that he needed medical attention.  Id.

Plaintiff then ran to the back of his cell until he saw "the taser appear" in one of the Defendants' hands.  Id.  Plaintiff yelled, "I'm trying to cuff up!"  Id.  Defendant Shuemake told Plaintiff to "come cuff up before [he] change[s his] mind."  Id.  Plaintiff approached the flap and

---

[1]     During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

placed his hands inside to allow Defendants to handcuff him.  Id.  Plaintiff "yell[ed] and cursed that the handcuffs were to[o] tight" and that he was sprayed "without cause."  Id.

Defendants then took Plaintiff to the medical unit "for a use of force checkup."  Id. at 5–6.  Plaintiff reported burning eyes and trouble breathing.  Id.  During his appointment, Defendant Davis "yanked" Plaintiff's handcuffs, pulling Plaintiff up, and Defendant Shuemake told the medical staff, "'F' him, he okay."  Id.  Defendants then removed Plaintiff from the medical unit and took him to a strip cell in 1-East-3.[2]  Id.  However, Defendants refused to provide Plaintiff with a decontamination shower though residual spray remained on Plaintiff's "body and eyes." Id.

Defendants left Plaintiff in the strip cell.  Id.  Two or three hours later, Defendant Shuemake returned.  Id.  When he returned, Defendant Shuemake told "Ms. Brownlee (CO II)" to "walk off."[3]  Id.  Then, Defendant Shuemake punched Plaintiff in the stomach and used his weight to push Plaintiff into the steel bed.  Id.  Defendant continued to punch Plaintiff in the stomach, back, and ribs for about 15 minutes.  Id.  Finally, Defendant Shuemake stopped, told Plaintiff "not to 'F' with him," and closed the cell door.  Id.  Plaintiff remained in the strip cell for an additional two or three hours until Officers Steel and Heard escorted him back to his assigned cell.  Id. at 7.

About three months later, on September 15, 2018, at around 4:00 or 5:00 p.m., Defendant Mendez sprayed a "chemical agent" through the flap on the door of Plaintiff's cell.  Id.  While the precise circumstances are unclear, it appears Plaintiff did not immediately answer a statement, request, or order from a prison official.  Id. at 8–9.  Plaintiff writes that "everything

---

[2]    "1-East-3" is its best interpretation of Plaintiff's handwriting.

[3]    It is not clear who Ms. Brownlee is, why she was present, or what she was doing at the time.

was secured and locked," but Defendant Mendez "still . . . came to [his] door" and sprayed his cell.  Id.  Defendant Mendez yelled, "This is for Lieutenant."  Id.  About an hour later, Defendant Mendez came back with Sergeant Mikell.  Id.  Sergeant Mikell told Plaintiff to cuff up, but Plaintiff saw a spray canister and a taser in Sergeant Mikell's hands and refused.  Id.  After Sergeant Mikell told Plaintiff to "shut up" and reassured Plaintiff that he would not be sprayed, Plaintiff came to the door.  Id.  The officers placed Plaintiff in restraints and escorted him to the K-1 Dorm.  Id.

On the way to the K-1 Dorm, the officers pushed Plaintiff against the wall in the hallway, which caused Plaintiff to become angry and yell.  Id.  Defendant Mendez then "punched [Plaintiff] with a closed fist," knocking Plaintiff "down and out."  Id.  Defendant Mendez then looked at the camera and told Sergeant Mikell to say that Plaintiff spit on him.  Id.  Sergeant Mikell "did it."  Id.  Plaintiff denies spitting on Defendant and writes that the video recordings will show he did not spit on anyone.  Id.  Defendant Mendez "got on top of [Plaintiff] and applied pressure to [his] head by pushing it into the floor."  Id.  Defendant Mendez "got close to [Plaintiff's] ear" and said, "This is for Shuemake, bitch."  Id. at 10.  Plaintiff was taken to medical and later escorted back to his cell.  Id.  Finally, Plaintiff alleges that because of this incident, he has been "subjected to excessive lockdown" and segregated from other inmates "for reasons unsupported by fact or cause."  Id. at 14.

Plaintiff alleges he sustained multiple injuries, including a chipped tooth (from his seizure), busted lips and bruised ribs (from Defendant Shuemake), burning eyes and lungs (from the spray), and a swollen lip and eye (from Defendant Mendez).[4]  Id.  As relief, Plaintiff

---

[4]     Plaintiff claims that, while "medical did the bare minimum," there is a "medical report and picture" on file.  Id. at 14.

requests: (1) $15,000 in compensatory damages; (2) $15,000 in punitive damages; (3) $1,000 in legal fees and court costs; and (4) release from "segregation isolation."  Id.

### STANDARD OF REVIEW

Plaintiff is bringing this action *in forma pauperis*.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or if it fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleadings contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.     Plaintiff's Amended Complaint, Doc. 9**

On June 5, 2019, the Court ordered Plaintiff to amend his Complaint.  Doc. 8.  The Court

noted that it appeared that Plaintiff's pen ran out of ink while Plaintiff was writing his Complaint

and that Plaintiff finished by using a pencil.  Id.  The Court found that a substantial portion of the

Complaint was illegible.  Id.  The Court deferred conducting its requisite frivolity review and

ordered Plaintiff to file an Amended Complaint.  The Court cautioned Plaintiff that his Amended

Complaint would supersede his original Complaint and he should include all claims and relevant

factual allegations in his Amended Complaint.  Id. at 4–5.  The Court also provided Plaintiff a

list of nine directives to aid him in drafting a proper Amended Complaint.  Id. at 5–6.  Plaintiff

filed a timely Amended Complaint that complied with the Court's Order.[5]  Doc. 9.

**II.    Claims Against Defendants in Their Official Capacities**

Plaintiff brings his § 1983 claims against Defendants in their official and individual

capacities.  Doc. 9 at 2, 12.  But Plaintiff cannot sustain a § 1983 claim for money damages

against Defendants in their official capacities.  States are immune from private suits under the

Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S.

706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state

---

[5]     Plaintiff includes in his attachments various documents discussing a May 31, 2019 incident where
Defendant Davis allegedly used excessive force against Plaintiff.  Doc. 9-1 at 1–8.  The proper
mechanism to add a new claim to a pre-existing cause of action is to either amend as a matter of course or
file a motion requesting leave to amend.  Fed. R. Civ. P. 15; Faulkner v. Monroe Cty. Sheriff's Dep't, 523
F. App'x 696, 702 (11th Cir. 2013) ("A pro se litigant 'is subject to the relevant law and rules of court,
including the Federal Rules of Civil Procedure.'" (quoting Moon v. Newsome, 863 F.2d 835, 837 (11th
Cir. 1989))).  Plaintiff's pleadings cannot be construed as attempting to either amend or request leave to
amend.  Moreover, the Court explicitly warned Plaintiff to include all claims and relevant factual
allegations raised against Defendants in his Amended Complaint.  Doc. 8 at 4–5.  Plaintiff did not include
any facts related to the May 31, 2019 incident in his Amended Complaint.  Doc. 9.  Accordingly, the
Court does not consider the new facts contained only in Plaintiff's attachments concerning the May 31,
2019 event as a part of his Amended Complaint and will not construe the new allegations as a request for
leave to amend.

from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).

Because a lawsuit against a state agency or a state officer in his official capacity is "no different

from a suit against the [s]tate itself," such defendants are immune from suit under § 1983.  Id. at

71.

Here, the State of Georgia would be the real party in interest in a suit against Defendants

in their official capacities as employees of the Department of Corrections.  Accordingly, the

Eleventh Amendment immunizes Defendants from suits for money damages in their official

capacities.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a waiver of that

immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official

capacities for monetary relief.  However, to the extent Plaintiff successfully states a

constitutional claim, he may seek injunctive relief against any Defendant in his official capacity.

Ex parte Young, 209 U.S. 123, 148–50 (1908).

For these reasons, the Court should **DISMISS** all claims for money damages against

Defendants in their official capacities.  However, Plaintiff's claim for release from administrative

segregation remains pending against Defendants in their official capacities.  See Daker v.

McLaughlin, No. 5:18-cv-00171, 2018 WL 3463271, at *2 (M.D. Ga. July 18, 2018) (finding

requests for release from administrative segregation are proper in a § 1983 action when the

prisoner does not allege the loss of good time or gain time credits).

## III.   Eighth Amendment Claims

Plaintiff brings three claims based on alleged violations of the Eighth Amendment:

(1) excessive force claims against Defendant Shuemake and Defendant Mendez; (2) failure to

intervene claim against Defendant Davis; and (3) deliberate indifference to medical needs claims

against Defendant Shuemake and Defendant Davis.  Doc. 9.

8

### A.      Excessive Force

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates.  Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  An excessive force claim has two requisite parts: an objective and a subjective component.  Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).  In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Subjectively, such "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'"  Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) (quoting Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)); Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) ("The 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010))). "Correctional officers in a prison setting can use pepper spray on an inmate, but there must be a valid penological reason for such a use of force."  Williams v. Rickman, 759 F. App'x 849, 851 (11th Cir. 2019).

The Eleventh Circuit Court of Appeals has "identified five factors to help evaluate whether force was applied maliciously or sadistically."  Pearson, 665 F. App'x at 863; Burke, 653 F. App'x at 695.  The factors are: (1) the need for the exercise of force; (2) the relationship between the need for force and the force applied; (3) the extent of injury that the inmate suffered; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken to temper the severity of a forceful response.  Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F.

App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).  Notably, "even when an initial use of force against a prisoner is constitutionally permissible, continued force is excessive after the prisoner has complied and control has been restored."  Williams, 759 F. App'x at 853.

   ***Defendant Shuemake***.  Plaintiff contends that, while he was experiencing an epileptic seizure, Defendant Shuemake ordered him to "cuff up" and, when Plaintiff failed to comply, sprayed a chemical agent into his cell.  Doc. 9 at 3–7.  After taking Plaintiff to the medical unit, Defendant Shuemake brought Plaintiff to a strip cell in 1-East-3.  Id.  When Defendant Shuemake returned several hours later, Defendant then proceeded to push him against a bed and beat him for approximately 15 minutes.  Id.  Plaintiff sustained a split lip and bruised ribs from this beating and also experienced burning in his eyes and lungs from the prolonged exposure to the chemical spray.  Id. at 14.  These allegations set forth a non-frivolous excessive force claim against Defendant Shuemake.  See, e.g., Williams, 759 F. App'x at 852 ("Crediting Mr. Williams' version of events at summary judgment, as we must, Captain Harrell's use of pepper spray was not penologically justified—because Mr. Williams was not misbehaving—and constituted excessive force."); Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010) (finding an Eighth Amendment violation when prison officials sprayed the plaintiff-inmate with a chemical agent when that inmate "was fully secured in his . . . cell," was "not presenting a threat," and "was unable to understand and comply with officers' orders due to his mental illness").  Plaintiff's excessive force claim shall proceed against Defendant Shuemake in his individual capacity.

   ***Defendant Mendez***.  Plaintiff asserts that, about three months after Defendant Shuemake's use of force discussed above, Defendant Mendez sprayed a chemical agent into

Plaintiff's cell.  Id. at 8–10.  Plaintiff writes that Defendant Mendez did so because Plaintiff delayed responding to an officer's command.  Id.  After using the spray, Defendant Mendez and another officer placed Plaintiff in restraints and escorted him through the halls of the prison.  Id.  Plaintiff began to yell, and Defendant Mendez responded by punching Plaintiff "with a closed fist," knocking Plaintiff into the floor, getting on top of him, and pushing him into the ground.  Id.  Plaintiff sustained a swollen lip and bruised ribs.  Id. at 14.  Plaintiff's allegations set forth a non-frivolous excessive force claim against Defendant Mendez, and the claim shall proceed against Defendant Mendez in his individual capacity.

### B.    Failure to Intervene

"It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983."  Fundiller v. City of Cooper City, 777 F.2d 1436, 1441 (11th Cir. 1985).  Rather, the Eighth Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates."  Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014).  Under this standard, "an officer can be liable for failing to intervene when another officer uses excessive force."  Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000) (citing Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998)); Sebastian v. Ortiz, 918 F.3d 1301, 1312 (11th Cir. 2019) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." (quoting Ensley, 142 F.3d at 1407)); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); see also Bailey v. City of Miami Beach, 476 F. App'x 193, 196–97 (11th Cir. 2012) (no qualified immunity for officer who watched for two or three minutes while two of his fellow officers "attacked" plaintiff); Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005)

(applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault).  However, "[t]o be held liable, the officer must both be 'in a position to intervene' and 'fail[] to do so' [and] there also must be an underlying constitutional violation." Sebastian, 918 F.3d at 1312 (quoting Priester, 208 F.3d at 924).

Plaintiff alleges Defendant Davis failed to intervene when Defendant Shuemake sprayed a "chemical agent" into Plaintiff's cell while Plaintiff was undergoing an epileptic seizure.  He also alleges that Defendant Davis stood near the door of the cell when Defendant Shuemake applied the spray inside and that Defendant Davis assisted Defendant Shuemake by passing him additional spray.  Doc. 9 at 3–5.  This is enough to plead a non-frivolous failure to intervene claim, and the claim will proceed against Defendant Davis in his individual capacity.

### C.    Deliberate Indifference to Medical Needs

"Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment."  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Farmer, 511 U.S. at 828; Estelle v. Gamble, 429 U.S. 97, 104 (1976).  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, prisoners seeking to bring deliberate indifference claims in this context must show three things.  Goebert, 510 F.3d at 1326.  First, the incarcerated individual must first "satisfy the objective component by showing that she had a serious medical need."  Id.; Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).  Secondly, the inmate "must satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need."  Goebert, 510 F.3d at 1326.  Finally, like any other

tort claim, the prisoner must demonstrate "that the injury was caused by the defendant's wrongful conduct."  Id.

Objectively, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Id. (quoting Hill, 40 F.3d at 1187).  In the Eleventh Circuit, the subjective component requires that "a defendant know of and disregard an excessive risk to an inmate's health and safety."  Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995).  The subjective prong itself is fulfilled when the inmate "prove[s] three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."[6]  Goebert, 510 F.3d at 1327 (alteration in original).

Plaintiff pleads enough facts to show Defendants Shuemake and Davis had subjective knowledge of the risk posed and that they disregarded this risk by conduct which amounted to more than negligence.  Defendant Shuemake deployed a chemical spray into Plaintiff's cell while Defendant Davis stood with him.  Id.  Plaintiff complained loudly and requested medical attention.  Id.  Plaintiff alleges that, after Defendants Shuemake and Davis exposed him to chemical spray, they took him to the medical unit but then forced him to leave prematurely. Doc. 9 at 3–7.  After leaving the medical unit, Defendants Shuemake and Davis escorted Plaintiff to a strip cell in I-East-3.  Id.  Defendants Shuemake and Davis "refused" to provide him a "decontamination shower to remove the spray from [his] body and eyes."  Id. at 5.  Rather, they simply left Plaintiff inside of the strip cell for four to six hours before other officers returned

---

[6]     Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is inconsistent.  Compare Goebert, 510 F.3d at 1327, with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  In Melton, the Eleventh Circuit directly addressed this discrepancy and found "more than mere negligence" to be the appropriate standard. Melton v. Abston, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016).  Accordingly, this Court will apply the "more than mere negligence" standard.

Plaintiff to building G2.  Id.; see McNeeley v. Wilson, 649 F. App'x 717, 722 (11th Cir. 2016)

(affirming the district court's denial of qualified immunity when, "four hours after being

sprayed," the plaintiff-inmate "was allowed to shower for approximately five to ten minutes" and

plaintiff sustained injuries from the prolonged exposure); Danley v. Allen, 540 F.3d 1298, 1312

(11th Cir. 2008) (Defendants "were aware of a risk of serious harm from the prolonged exposure

to pepper spray that would result from failing to decontaminate" plaintiff.), *overruled in part on*

*other grounds by* Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Plaintiff's deliberate indifference

claim against Defendants Davis and Shuemake in their individual capacities shall proceed.

## IV.    Retaliation Claim Against Defendant Mendez

To establish a First Amendment retaliation claim, a prisoner need not allege the violation

of an additional separate and distinct constitutional right; instead, the core of the claim is that the

prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch,

637 F.3d 1207, 1212 (11th Cir. 2011).  "To prevail, the inmate must establish these elements:

(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the

administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness

from engaging in such speech; and (3) there is a causal relationship between the retaliatory

action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing

Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Plaintiff brings a retaliation claim against Defendant Mendez, ostensibly because

Defendant Mendez punched Plaintiff while Plaintiff was "cuffed up" but "yell[ing] loudly" in the

prison hallway and then told Plaintiff, "This is for Shuemake, bitch."  Doc. 9 at 8–10.  However,

Plaintiff does not explain what act or actions prompted Defendant Mendez to use force in

retaliation.  While Plaintiff states in his Amended Complaint that he filed a grievance about the

incidents herein which were forwarded to the Inmate Affairs Investigation Unit, he fails to allege that Defendant Mendez retaliated against him based on that grievance or the resulting investigation.  Id. at 16.  Thus, Plaintiff fails to allege that the retaliation occurred in response to some form of constitutionally protected speech.  Without that allegation, Plaintiff fails to allege protected speech caused the retaliatory act.  Therefore, I **RECOMMEND** the Court **DISMISS** Plaintiff's retaliation claim against Defendant Mendez.

## V.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis* as to his retaliation claim.  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier, 314 F.3d at 531; see also Brown v. United States, Nos. 4:07-cv-085, 4:03-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to Plaintiff's retaliation claim against Defendant Mendez.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** Plaintiff's retaliation claim against Defendant Mendez.  I **RECOMMEND** the Court **DISMISS** Plaintiff's claims for money damages against all Defendants in their official capacities.  I **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis status* on appeal.  However, I **FIND** Plaintiff's excessive force claims against Defendants Shuemake and Mendez, his failure to intervene claim against Defendant Davis, and his deliberate indifference claim against Defendants Shuemake and Davis shall all proceed against Defendants in their individual capacities.  Additionally, Plaintiff's request for injunctive relief shall proceed against Defendants in their official capacities.  A copy of Plaintiff's Complaint, doc. 1, Amended Complaint, doc. 9, and a copy of this Order shall be served upon Defendants Shuemake, Mendez, and Davis by the United States Marshal without prepayment of cost.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

16

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.**

<u>**INSTRUCTIONS TO DEFENDANTS**</u>

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to defendants by first-class mail and request that defendants waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.7.  Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until60 days after the date that the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised that the Court's standard 140-day discovery period will commence upon the

filing of the last answer.  Local R. 26.1.  Defendants shall ensure that all discovery, including

Plaintiff's deposition and any other depositions in the case, is completed within that discovery

period.

In the event that Defendants take the deposition of any other person, Defendants are

ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will

likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the

deposition and advise him that he may serve on Defendants, in a sealed envelope, within 10 days

of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any.

Defendants shall present such questions to the witness seriatim during the deposition.  Fed. R.

Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if

appearance has been entered by counsel, upon their attorney, a copy of every further pleading or

other document submitted for consideration by the Court.  Plaintiff shall include with the original

paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct

copy of any document was mailed to Defendants or their counsel.  Fed. R. Civ. P. 5.  "Every

pleading shall contain a caption setting forth the name of the court, the title of the action, [and]

the file number."  Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and

defense counsel of any change of address during the pendency of this action.  Local R. 11.1.

Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this

case.

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery.  See generally Fed. R. Civ. P. 26 *et seq*.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  Id.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the**

**collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate. Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

**<u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING
MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>**

Defendants may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both.  Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does

not oppose the Defendants' motion.  Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.  Local R. 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of September, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA