IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| QUONTERIOUS TOLES,<br><br>    Plaintiff,<br><br>    v.<br><br>RONNIE SHUEMAKE; SGT. FREDDY DAVIS; and SERGEANT MICHAEL MENDEZ,<br><br>    Defendants. | CIVIL ACTION NO.: 6:18-cv-96 |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment, doc. 39. For the reasons discussed below, I **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

**BACKGROUND**

Plaintiff brought this 42 U.S.C. § 1983 action, asserting claims relating to his conditions of his confinement at Georgia State Prison in Reidsville, Georgia. Doc. 1. The Court ordered Plaintiff to file an Amended Complaint because his initial Complaint was illegible. Doc. 8. Plaintiff filed an Amended Complaint on June 14, 2019. Doc. 9. After conducting frivolity review of Plaintiff's Amended Complaint, the Court dismissed Plaintiff's retaliation claim and his claims for monetary damages against Defendants sued in their official capacities. Doc. 13. Thus, the only remaining claims are: (1) excessive force claims against Defendants Shuemake and Mendez; (2) failure to intervene claim against Defendant Davis; and (3) deliberate indifference claims against Defendants Shuemake and Davis. Id.

Plaintiff filed this Motion for Summary Judgment on March 12, 2020. Doc. 39. Responses were originally due on April 2, 2020. Doc. 40. The Court granted Defendants' motion for extension of time to file a response. Doc. 50. In this Order, the Court stated responses were due by June 29, 2020. Id. Defendants filed their Response on November 30, 2020—five months late—without any request for further extension pending. Doc. 64. The Court still considers Defendants' Response but directs Defendants to comply with deadlines moving forward.

## DISCUSSION

As a preliminary matter, Plaintiff appears to misunderstand the nature of summary judgment. Plaintiff argues in his Motion he is entitled to summary judgment on all claims because a genuine dispute of material fact remains for trial. See Doc. 39 at 4–5. Plaintiff states the facts should be viewed in the light most favorable to him. Id. at 1. These are not the correct standards for the Court to apply when Plaintiff is the moving party. Plaintiff, at times, discusses withstanding or overcoming summary judgment but then also states he is entitled to summary judgment. Id. at 1, 5. Thus, it is unclear to the Court whether Plaintiff wishes to independently move for summary judgment on all claims or to preemptively file a response brief to a future summary judgment motion Defendants might file. Additionally, Plaintiff filed his Motion very early at the outset of discovery.

In order for Plaintiff to receive summary judgment in his favor, he would need to show there is no genuine dispute of material fact for trial and he is entitled to judgment as a matter of law on his claims. In other words, Plaintiff must show the undisputed, material evidence requires judgment in his favor, such that no trial is necessary. If Plaintiff can make this showing (i.e., carry his burden), then the Court will grant summary judgment to him on his claims; if

Plaintiff cannot make this showing, the Court will deny Plaintiff's request for summary judgment. As explained below, Plaintiff has not carried his burden.

I.  **Undisputed Material Facts**[1]

In June or July of 2018, Defendants Shuemake and Davis approached Plaintiff's cell door to repond to an incident. Doc. 65-1 at 1; Doc. 39 at 1. After an interaction the parties dispute, Shuemake instructed Davis to spray pepper spray into Plaintiff's cell. Doc. 65-1 at 2; Doc. 39 at 2. Plaintiff began to yell at the officers while this occurred. Doc. 65-1 at 3; Doc. 39 at 2. Plaintiff then ran to the back of his cell after he saw an officer pull out a taser, which Defendants contend was never used. Doc. 65-1 at 3; Doc. 39 at 2. Plaintiff continued to yell. Doc. 65-1 at 3; Doc. 39 at 2. Defendants instructed Plaintiff to come to the door to "cuff up." Doc. 65-1 at 4; Doc. 39 at 2. Plaintiff then came to the cell door and placed both hands out of the hand cuff flap so Defendants could handcuff him, which they did. Doc. 65-1 at 4; Doc. 39 at 2. Plaintiff continued yelling. Doc. 65-1 at 4; Doc. 39 at 2. Defendants Shuemake and Davis escorted Plaintiff and his cellmate out of the cell, as Plaintiff yelled and cursed at Defendants. Doc. 65-1 at 4; Doc. 39 at 2. Plaintiff was then taken to the medical unit for a use of force assessment. Doc. 65-1 at 4; Doc. 39 at 2. Plaintiff informed the nurse he was having trouble breathing and seeing. Doc. 65-1 at 4; Doc. 39 at 2. The camera was obscured in the medical unit at some point during Plaintiff's visit. Doc. 65-1 at 4; Doc. 39 at 2. Plaintiff was then taken from the medical unit to D-East 3 Cell 24. Doc. 65-1 at 5; Doc. 39 at 2–3. Plaintiff was placed in a strip cell for

---

[1] Plaintiff did not submit a separate numbered statement of facts, as this Court's Local Rule 56.1 requires. Nevertheless, Defendants outlined each of Plaintiff's facts discussed in his brief and indicated which facts they dispute. Doc. 65-1 at 1–12. The Court has reviewed the facts discussed in Plaintiff's brief and Defendants' Response to determine which facts are undisputed. The Court draws all reasonable inferences in Defendants' favor as the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

several hours.  Doc. 65-1 at 5; Doc. 39 at 3.  Officers Steel and Heard came to the cell with a jumpsuit and escorted Plaintiff back to his cell.  Doc. 65-1 at 6; Doc. 39 at 3.

In September 2018, Defendant Mendez also sprayed a chemical agent into Plaintiff's cell for reasons the parties dispute.  Doc. 65-1 at 6; Doc. 39 at 3.  Defendant Mendez then left and later returned with more officers.  Doc. 65-1 at 7; Doc. 39 at 3.  Once Defendant Mendez returned, Plaintiff went to the rear portion of his cell.  Doc. 65-1 at 7; Doc. 39 at 3.  Defendant Mendez asked Plaintiff to cuff up, and Plaintiff followed orders.  Doc. 65-1 at 7; Doc. 39 at 3.  Defendant Mendez and Sergeant Mikel opened the cell door to transport Plaintiff to medical.  Doc. 65-1 at 7; Doc. 39 at 4.  Plaintiff began yelling at Defendant Mendez.  Doc. 65-1 at 7; Doc. 39 at 4.  For reasons which appear to be disputed, Defendant Mendez punched Plaintiff in the jaw.  Doc. 65-1 at 7; Doc. 39 at 4.  Plaintiff lost his balance and blacked out for a few seconds.  Doc. 65-1 at 7; Doc. 39 at 4.  Plaintiff's mouth was bleeding on the way to the medical unit.  Doc. 65-1 at 7; Doc. 39 at 4.  Plaintiff was taken back to his assigned dorm after the visit to the medical unit.  Doc. 65-1 at 8; Doc. 39 at 4.

## II.     Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the

nonmoving party] is merely colorable or is not significantly probative[,] summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  Once the party moving for summary judgment satisfies his initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge, 630 F.3d at 1353.

### III.    Legal Standard for Excessive Force Claims

Prison officers are prohibited from using excessive force against inmates under the Eighth Amendment.  Thomas v. Bryant, 614 F.3d 1288, 1303–04 (11th Cir. 2010).  However, not every use of force amounts to a constitutional violation.  While prison officials may use force in a good-faith effort to maintain or restore discipline, they may not do so maliciously and sadistically to cause harm.  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).  Courts should evaluate five factors when determining whether the use of force was applied maliciously or sadistically: "(1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates,

as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to temper the severity of the use of force." Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) (citing Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008)).

Overall, the court should defer to prison officers acting to preserve discipline and security. Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). For example, a prison officer may use bursts of pepper spray against an inmate who refused to obey orders without violating the Eighth Amendment. Danley, 540 F.3d at 1308, *overruled on other grounds, as recognized by* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). Pepper spray is often a reasonable alternative to other forms of physical force. Id. (citing Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002)). But, confining an inmate in a small cell and not permitting decontamination after justified spraying may constitute excessive force. Id. at 1308–09. Additionally, prison officers may not justifiably use force after a prisoner has stopped resisting because "the force thereafter is disproportionate to the need." Id. at 1309.

**IV.   Analysis**

Plaintiff principally argues he did not resist during either incident, and thus, Defendants' use of force was not justified. Doc. 39 at 9. In support of his Motion, Plaintiff has filed internal prison documents, Standard Operating Procedures, and medical records demonstrating he has a history of seizures. Docs. 39-2, 39-3, 39-4, 39-5, 39-6, 39-7, 39-8. Plaintiff cites to his own unsworn Complaint, which is not evidence for purposes of a summary judgment motion. Chambliss v. Buckner, 804 F. Supp. 2d 1240, 1248 n.6 (M.D. Ala. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).[2] Plaintiff at times references several declarations and

---

[2] Plaintiff only cites to his original Complaint in his Motion, but an Amended Complaint has been submitted, as noted previously. Docs. 39, 9.

6

witness statements completed by Plaintiff and other prisoners without referencing any specific pages or portions. Doc. 39; Doc. 39-1. Plaintiff previously submitted these documents with his Amended Complaint, but they sometimes discuss events outside the scope of this case. Doc. 9-1. Plaintiff also cites video footage from various events but has not submitted the videos to the Court. See Doc. 39-4 at 1–2, Doc. 39. The Court has since received a video of the first pepper-spray incident from Defendants, but the Court does not have any video footage of the second incident. Doc. 66.

### A.     July 2018 Incident

Plaintiff contends Defendants Shuemake and Davis approached his cell while he experienced an epileptic seizure in June or July of 2018. Doc. 39 at 1. Defendants Shuemake and Davis told Plaintiff to approach the door and "cuff up." Id. Plaintiff states his cellmate was in the process of helping him to his feet when Defendants Shuemake and Davis started spraying pepper spray into the cell. Id. at 1–2. Plaintiff states he yelled he did nothing wrong and needed medical attention. Id. at 2. Plaintiff states an officer pulled out a taser, and he yelled he "was trying to cuff up. If you will let me." Id. Plaintiff further contends he told the officers they could not use a taser on him because of his seizures. Id. After another order to do so, Plaintiff put his hands through the cuff flap. Id.

Defendants Shuemake and Davis then took Plaintiff and his cellmate out of the cell to the medical unit. Id. Plaintiff contends Defendant Davis pulled him up and said to medical staff, "F him, he okay." Id. It is undisputed Plaintiff was then taken from the medical unit to D-East 3 Cell 24, a strip cell. Doc. 39 at 2; Doc. 65-1 at 5. Plaintiff contends Defendants refused him a decontamination shower. Doc. 39 at 3. Plaintiff further states after telling Ms. Browntee to "walk off," Defendant Shuemake punched him in the back, stomach, and ribs and pushed his

face into "the steele [sic] bed." Id.  Plaintiff contends, because Defendant Shuemake violated Georgia Department of Corrections' ("GDC") policy by not filing a required report about the incident within the requisite time period, he is entitled to summary judgment in his favor.  Id. at 10.

Regarding his deliberate indifference claim against Defendant Shuemake, Plaintiff argues Defendant Shuemake ignored his history of seizures and GDC policy when ordering the use of pepper spray and threatening to use a taser.  Id. at 10.  Plaintiff also asserts Defendant Shuemake stood by while Defendant Davis used excessive force.  Id. at 11.  Plaintiff does not appear to directly address his failure to intervene claim or deliberate indifference claim against Defendant Davis in his Motion.  Doc. 39 at 10–11.

Defendants argue a genuine dispute remains as to whether the use of force was justified.  Doc. 65 at 6–7.  Defendant Shuemake and Davis have submitted affidavits stating they did not know Plaintiff suffered from a seizure that day.  Doc. 64-6 at 2; Doc. 64-4 at 2.  Defendant Shuemake further states in his affidavit Plaintiff threw a liquid substance out of his cell, which hit an officer in the face.  Doc. 64-6 at 2.  Defendant Shuemake asserts the liquid "had a chemical smell like that of urine."  Id.  He states both Plaintiff and his cellmate then refused orders to come to the cell door to be cuffed.  Id.  At that point, Defendant Shuemake directed Defendant Davis to spray pepper spray into the cell.  Id.; Doc. 64-4 at 2.  Defendant Shuemake asserts no one in medical told him Plaintiff should be showered and Plaintiff did not request a shower.  Doc. 64-6 at 2.  Defendant Shuemake states this was his final contact with Plaintiff that day, and he never went to Plaintiff's cell later that day to hurt him.  Id.

Plaintiff has not met his burden of showing he is entitled to judgment as a matter of law for his excessive force claim against Defendant Shuemake.  First, Plaintiff has not shown no

8

reasonable jury could determine Defendant Shuemake's direction to use pepper spray and threatening to use a taser was a good-faith effort to maintain or restore discipline. Wilkins, 559 U.S. at 37. Second, a genuine dispute remains for trial as to whether Shuemake ever saw Plaintiff later that day and beat him.

For similar reasons, Plaintiff has not met his burden of showing he is entitled to summary judgment for his deliberate indifference claim against Defendant Shuemake. If a reasonable jury could determine the use of pepper spray and threatened use of a taser were justified, Defendant Shuemake could not be held liable for his supervision of Defendant Davis. Defendants have demonstrated a genuine dispute of material fact exists as to Plaintiff's deliberate indifference claim against Defendant Shuemake.

Plaintiff has also not met his burden of showing he is entitled to summary judgment for his failure to intervene and deliberate indifference claims against Defendant Davis. Plaintiff has not addressed these claims whatsoever in his Motion.[3]

**B.     September 2018 Incident**

Plaintiff asserts Defendant Mendez came to his cell on September 15, 2018, to ask about his civil suit against Defendant Shuemake. Doc. 39 at 3. After Plaintiff refused to answer, he states Defendant Mendez sprayed "a chemical agent" into his cell. Id. Plaintiff contends he asked Defendant Mendez what he did wrong as Defendant Mendez sprayed into his cell and Defendant Mendez responded, "This for Shuemake." Id. Plaintiff states Defendant Mendez then left to get more spray and returned with more officers. Id. Plaintiff then complied with orders to

---

[3]     Plaintiff does appear to seek summary judgment on an excessive force claim against Defendant Davis, but Plaintiff has not asserted such a claim in this case. Docs. 13, 19 (recognizing the only claims Plaintiff asserts against Defendant Davis in this action are claims for Davis' purported failure to intervene when Shuemake sprayed pepper spray into the cell and Davis' deliberate indifference to a medical risk following the pepper spraying).

"cuff up." Id. A short time later, Defendant Mendez punched Plaintiff in the jaw. Id.; Doc. 65-1 at 7. Plaintiff states this caused him to black out for a few seconds. Doc. 39 at 4. Plaintiff contends Defendant Mendez then told Sergeant Mikel Plaintiff spit on him. Id. Plaintiff was bleeding from his mouth and taken to the medical unit. Id.; Doc. 65-1 at 7. Plaintiff asserts he was then placed in a strip cell for several hours and Defendant Mendez told Plaintiff he would not eat for a week.[4] Doc. 39 at 4.

Defendants again argue the use of force was justified. Doc. 65 at 6–7. Defendant Mendez has submitted an affidavit in which he states he deployed pepper spray because Plaintiff disobeyed an order to close his slider and "instead projected a liquid substance out of his cell." Doc. 65-2 at 1. Defendant Mendez contends he struck Plaintiff in the face because Plaintiff spat on him. Id. at 2. Defendant Mendez states he did this "to maintain order and the security of the facility by asserting positive control and discouraging Inmate Toles from continued misbehavior." Id.

Plaintiff has not satisfied his burden of showing he is entitled to judgment as a matter of law for his excessive force claim against Defendant Mendez. Plaintiff has not shown no reasonable jury could determine Defendant Mendez acted in a good faith effort to restore order and discipline when Defendant Mendez claims Plaintiff disobeyed orders and spat on him. Wilkins, 559 U.S. at 37. For these reasons, a genuine dispute of material facts remains for trial regarding the September 2018 incident, which is the basis for Plaintiff's excessive force claim

---

[4]  Plaintiff also states Defendant Mendez denied him a decontamination shower after the September 2018 incident. Doc. 39 at 7. Plaintiff only mentions this fact in the body of his brief, and it is not included in his statement of facts or supported by any evidence submitted to the Court. Defendants do not indicate whether Plaintiff received a shower, but it is undisputed Plaintiff was taken to the medical unit after both incidents.

against Defendant Mendez.[5]  Accordingly, I **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

---

[5]  Plaintiff argues Defendant Mendez acted in retaliation by holding him a strip cell and denying him food, but all retaliation claims have already been dismissed.  Doc. 13 at 14–15; Doc. 19 at 1.

11

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 16th day of February, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA