IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| QUONTERIOUS TOLES,<br><br>      Plaintiff,<br><br>      v.<br><br>LT. RONNIE SHUEMAKE; SGT. FREDDY DAVIS; and SERGEANT MICHAEL MENDEZ,<br><br>      Defendants. | CIVIL ACTION NO.: 6:18-cv-96 |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants Shuemake, Davis, and Mendez's Motion for Summary Judgment. Doc. 64. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment and **DIRECT** the Clerk of Court to enter the appropriate judgment in favor of all Defendants on Plaintiff's claim for injunctive relief, in favor of Defendant Davis on all claims, and in favor of Defendant Shuemake on Plaintiff's deliberate indifference claim. Plaintiff's excessive force claims against Defendants Shuemake and Mendez remain pending.

**BACKGROUND**

Plaintiff brought this 42 U.S.C. § 1983 action, asserting claims relating to his conditions of confinement at Georgia State Prison in Reidsville, Georgia. Doc. 1. The Court ordered Plaintiff to file an Amended Complaint because his initial Complaint was illegible. Doc. 8. Plaintiff filed an Amended Complaint on June 14, 2019. Doc. 9. After conducting frivolity review of Plaintiff's Amended Complaint, the Court dismissed Plaintiff's retaliation claim and

his claims for monetary damages against Defendants sued in their official capacities. Doc. 13. Thus, the only remaining claims are: (1) excessive force claims against Defendants Shuemake and Mendez; (2) failure to intervene claim against Defendant Davis; and (3) deliberate indifference claims against Defendants Shuemake and Davis. Id.

Plaintiff filed a motion for summary judgment on March 9, 2020. Doc. 39. The Court denied Plaintiff's motion. Docs. 70, 71. Defendants filed their Motion for Summary Judgment on November 30, 2020. Doc. 64. Defendants only moved for summary judgment as to Plaintiff's claims for injunctive relief, the failure to intervene claim against Defendant Davis, and the deliberate indifference to medical treatment claims against Defendants Shuemake and Davis. Id. Defendants concede genuine disputes remain for trial regarding the excessive force claims against Defendants Shuemake and Mendez. Id. at 1. On December 2, 2020, the Court mailed a notice to Plaintiff relating to Defendants' Motion for Summary Judgment, which directed him to file a response brief. Doc. 67. In the Notice, the Court warned a consequence of a failure to respond "may be that the Court will deem the motion unopposed, and the Court may enter judgment against you." Id. Additionally, the Court explained it would assume Plaintiff admitted all facts in Defendants' statement of facts unless Plaintiff filed his own statement of facts in response. Id.

On December 11, 2020, Plaintiff filed a motion requesting to use his previously filed motion for summary judgment as his response brief to Defendants' Motion. Doc. 68. On February 12, 2021, the Court denied this request. Doc. 69. The Court reasoned it would be inappropriate to use Plaintiff's previously filed motion for this purpose because Plaintiff filed the motion before Defendants even filed their Motion for Summary Judgment. Id. at 2. The Court explained Defendants set forth additional facts in their Motion Plaintiff neither admitted nor

2

denied in his motion.  Id.  Thus, the Court directed Plaintiff to file a response brief within 30 days.  Id.  The Court further stated, "If Plaintiff needs additional time to file a response brief, he should file a request for an extension."  Id. at 2.  Despite this Court's December 2, 2020 Notice and February 12, 2021 Order, Plaintiff has not filed a response brief.  Nor has Plaintiff filed a request for an extension.  Accordingly, the Court finds Plaintiff has admitted to all of Defendants' material facts under the Court's Local Rules.  Local R. 56.1.  For purposes of the summary judgment record, the Court does consider those attachments submitted with Plaintiff's previous motion, docs. 39-2, 39-3, 39-4, 39-5, 39-6, 39-7, 39-8, and those attachments submitted with Plaintiff's Amended Complaint, doc. 9-1.[1]

## UNDISPUTED MATERIAL FACTS[2]

In July 2018, Plaintiff Quonterious Toles was an inmate at Georgia State Prison ("GSP").  Doc. 64-2 at 1.  On July 26, 2018, Plaintiff was housed in Cell G-2-25.  Id. at 2.  Defendant Ronnie Shuemake was a correctional officer with the rank of lieutenant at GSP.  Id.  Defendant Freddie Davis was a correctional officer with the rank of sergeant working with the Correctional Emergency Response Team at GSP.  Id.  Plaintiff claims he experienced a seizure on the morning of July 26, 2018.  Id.  Plaintiff believes, while he was unconscious, his cellmate stuck his (the cellmate's) arm out of the tray flap in the cell door to get assistance.  Id.

---

[1]  The attachments to Plaintiff's Amended Complaint consist of various witness statements completed by Plaintiff and other inmates.  Most of the witness statements do not relate to the incidents at issue in this case.  Some of the witness statements are signed, others are not.

[2]  In support of their statement of material facts, Defendants submitted a video of events of July 2018, including much of what is described here.  It appears the video was recorded on a handheld camera by a correctional officer, possibly an Officer Scarborough.  Doc. 64-3 at 5.  At times, Defendant Shuemake speaks directly to the camera, providing commentary about the events as they occurred.  The Court has reviewed the video in its entirety.

Defendant Shuemake first responded to the report of an inmate with his arm out of a flap; Defendant Davis arrived later. Id. Defendant Davis did not know the specifics of what prompted the situation, but he witnessed Plaintiff and his cellmate refuse instructions to come to the cell door to be cuffed so they could be removed from the cell. Id. Both inmates refused these instructions to come to the cell door. Id. At Defendant Shuemake's instructions, officers, including Defendant Davis, discharged pepper spray into the cell multiple times. Id. at 3. Eventually, the inmates complied and allowed themselves to be cuffed. Id. The officers present removed the inmates from the cell. Id. After the removal, Defendant Davis escorted Plaintiff's cellmate to medical to be checked. Id. Defendant Davis had no further dealings with Plaintiff that day. Id. After the removal, Defendant Shuemake escorted Plaintiff to medical to be checked. Id. No one in medical instructed Defendant Shuemake Plaintiff should be showered. Id. Plaintiff did not request to be taken to the showers. Id. After spending a few hours in a "strip cell," Plaintiff was returned to his original cell. Id. Plaintiff has a long disciplinary history of several serious disciplinary infractions. Id. at 4; Doc. 64-5. Plaintiff has notified the Court he was transferred to Augusta State Medical Prison and later Telfair State Prison. Docs. 15, 62.

**DISCUSSION**

**I.     Legal Standard**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

**II.    Analysis**

    **A.    Injunctive Relief**

In his Amended Complaint, Plaintiff requests release from segregation as relief. Doc. 9 at 14. When conducting frivolity review, the Court directed service of an injunctive relief claim

against all Defendants. Doc. 13 at 16. "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984); see Robbins v. Robertson, 782 F. App'x 794, 800 (11th Cir. 2019) (noting "an injunction directing his former prison officials to provide Plaintiff with a particular diet would provide Plaintiff with no relief").

Since filing this action, Plaintiff has submitted two letters to the Court indicating he has been transferred to Augusta State Medical Prison and later Telfair State Prison. Docs. 15, 62. Thus, his claim for injunctive relief is rendered moot by his transfer. McKinnon, 745 F.2d at 1363. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment relating to Plaintiff's injunctive relief claim against all Defendants.

### B. Failure to Intervene Claim and Excessive Force Claim Against Defendant Davis

The nature of Plaintiff's claims against Defendant Davis warrants some clarification. In Plaintiff's Amended Complaint, Plaintiff alleged Defendant Davis "stood by" as Defendant Shuemake sprayed pepper spray into the cell and later passed him additional spray. Doc. 9 at 4. Therefore, at the frivolity review stage, the Court directed service of a failure to intervene claim against Defendant Davis. Doc. 13 at 11–12. However, the undisputed facts and materials presented by Defendants in support of their Motion show Defendant Shuemake directed an unidentified officer to deploy pepper spray into Plaintiff's cell, then Defendant Davis arrived at the scene, at which point Shuemake directed Davis to spray pepper spray into the cell as well. Thus, Plaintiff's claim pending against Defendant Davis could reasonably be construed as a failure to intervene claim (related to the spraying of pepper spray by the first unidentified officer) or a traditional excessive force claim (related to Davis' spraying of pepper spray into Plaintiff's cell). Defendants contend it does not matter how the claim is construed because Defendant

Davis is entitled to summary judgment under either characterization. The Court analyzes Plaintiff's claim against Defendant Davis both as a failure to intervene claim and a traditional excessive force claim.

### 1. *Legal standard.*

Even as a non-participant, an officer can be held liable separately for failing to take reasonable steps to protect a prisoner from excessive force under the Eighth Amendment. Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (citing Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)). When proving a failure to intervene claim, the plaintiff bears the burden of demonstrating "the defendant was in a position to intervene but failed to do so." Id. (citing Hadley v. Gutierrez, 526 F.3d 1324, 1330–31 (11th Cir. 2008)). A successful claim requires "facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct." Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010). Additionally, if no underlying use of excessive force exists, a failure to intervene claim cannot succeed. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009).

Regarding excessive force claims generally, not every use of force amounts to a constitutional violation. While prison officials may use force in a good-faith effort to maintain or restore discipline, they may not do so maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). Courts should evaluate five factors when determining whether the use of force was applied maliciously or sadistically: "(1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to

temper the severity of the use of force." Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) (citing Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008)).

Overall, the court should defer to prison officers acting to preserve discipline and security. Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). For example, a prison officer may use bursts of pepper spray against an inmate who refused to obey orders without violating the Eighth Amendment. Danley, 540 F.3d at 1308, *overruled on other grounds, as recognized by* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). Pepper spray is often a reasonable alternative to other forms of physical force. Id. (citing Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002)). But, confining an inmate in a small cell and not permitting decontamination after justified spraying may constitute excessive force. Id. at 1308–09. Additionally, prison officers may not justifiably use force after a prisoner has stopped resisting because "the force thereafter is disproportionate to the need." Id. at 1309.

### 2. *Analysis.*

Defendants argue Defendant Davis is entitled to summary judgment regardless of whether the remaining claim concerns his actual use of force or his failure to stop the other officers from using force. Doc. 64-1 at 7. Defendants assert Defendant Davis was called into a situation where he was informed inmates were refusing to follow instructions. Id. Defendants argue both Davis and another unidentified officer justifiably applied proportionate minor force by discharging pepper spray into Plaintiff's cell because they had observed the inmates refuse to follow orders. Id.

In support of their argument, Defendants rely on a declaration from Defendant Shuemake, a declaration from Defendant Davis, a video of events of July 2018, and Plaintiff's deposition. Docs. 64-3, 64-4, 64-6. In his declaration, Defendant Shuemake states Plaintiff

refused instructions to remove his arm from his tray flap and a liquid substance was discharged from the cell which smelled like urine. Doc. 64-6 at 1–2. At that point, Defendant Shuemake says he instructed Plaintiff and his cellmate to "come to the cell door to be cuffed so that they could be removed from the cell." Id. at 2. Defendant Shuemake states he then directed other officers to use pepper spray because both inmates refused these instructions. Id. Defendant Davis tells a similar story in his declaration. Doc. 64-4. However, he states he did not know "the specifics of what prompted the situation to begin." Id. at 1. Defendant Davis states he witnessed both inmates refusing instructions to come to the door, and afterwards, he discharged pepper spray into the cell at Defendant Shuemake's instructions. Id. Both Defendants Davis and Shuemake deny having any knowledge Plaintiff suffered from a seizure that day. Id. at 2; Doc. 64-6 at 2.

While the audio portion of the video submitted is somewhat difficult to decipher due to background noise,[3] it shows Defendant Shuemake in front of Plaintiff's cell door relaying orders, which included "put your hand out the flap" to Plaintiff and his cellmate.[4] Video at 3:56–4:15. After Defendant Shuemake gave these initial instructions, an inmate within the cell stated, "I said, I will if you don't spray me." Id. at 4:15. After a period of time, Defendant Shuemake then directed an unidentified officer to discharge two short bursts of pepper spray into the cell.[5] Id. at

---

[3] This background noise includes a lot of unintelligible yelling. However, the majority of this yelling could have originated from an inmate in another cell because the yelling continues even as Plaintiff and his cellmate were removed from the cell.

[4] Due to the poor audio quality, it is unclear whether Defendant Shuemake is asking the inmates to remove their hands from the tray flap or put their hands through the tray flap so they can be handcuffed. The distinction is immaterial for the purposes of ruling on Defendants' Motion.

[5] The Court can identify Defendant Davis as the second officer to discharge spray into the cell because he later escorted Plaintiff's cellmate to the medical unit and was wearing a gas mask. Video at 12:00–12:13. Further, Defendant Shuemake identifies the officer wearing a gas mask as "Fred" during

9

4:15–6:00.  Defendant Shuemake then yelled more orders at the inmates and directed the same unidentified officer to spray a third burst.  Id. at 6:11.  Defendant Shuemake then asked for "MK9" pepper spray and ordered the inmates to come outside the cell.  Id. at 6:20–6:39.  Defendant Davis then appears for the first time in the video and discharges two short bursts of pepper spray into the cell.  Id. at 7:40–7:52.  After Defendant Davis discharged the pepper spray, Defendant Shuemake gave further orders for the inmates to put their hands through the tray flap to be cuffed, and Shuemake put a taser in front of the tray flap, at which point Plaintiff and his cellmate put their hands through the flap to be cuffed.  Id. at 8:15–10:07.

In his deposition, Plaintiff states he does not know what happened before Defendants Shuemake and Davis arrived because he had a seizure that morning and was unconscious.  Doc. 64-3 at 4.  Plaintiff asserts he told his cellmate to inform "them" he had had a seizure once the officers arrived, which he did.  Id. at 4.  However, Plaintiff's cellmate could not have informed Davis of this fact because Davis was not near the door or in the video frame whatsoever when the officers first arrived at the cell.  Plaintiff states when the officers began discharging pepper spray, he and his cellmate ran to the back of the cell rather than following instructions to come to the tray flap to be handcuffed.  Id. at 5.

Based on the evidence before the Court at this time, there is no genuine dispute of material fact for trial regarding Plaintiff's failure to intervene claim against Defendant Davis.  Regarding the initial spraying conducted by another officer, Plaintiff has not met his burden of showing Defendant Davis was in "a position to intervene" at that time.  Ledlow, 500 F. App'x at 914.  It is not clear after reviewing the video footage whether Defendant Davis was even present

---

that portion of the video.  The first unidentified officer to discharge pepper spray went with Defendant Shuemake to escort Plaintiff to medical and was carrying a large pepper spray cannister.  Id. at 12:13–15:32.

during the initial spraying. Defendant Davis does not appear in the camera frame until much later into the incident. Plaintiff does not dispute Defendant Davis arrived at the cell sometime after Defendant Shuemake. Because Plaintiff has not produced evidence tending to show Defendant Davis observed this initial spraying or otherwise responded, Plaintiff has not set forth "facts showing the necessity or real opportunity for [Defendant Davis] to intervene." Keating, 598 F.3d at 764. Additionally, Plaintiff has not shown it would have been apparent to Defendant Davis the other officers were applying force maliciously and sadistically based on the facts known to Defendant Davis at that time, even if Defendant Davis had been present. Plaintiff does not dispute Defendant Davis lacked any specific knowledge about what prompted the situation and simply observed the inmates refuse to follow orders once he did arrive. In his deposition, Plaintiff admitted he and his cellmate disobeyed orders to come to the cell door to be handcuffed. Doc. 64-3 at 5. Thus, Defendant Davis had no reason to believe the force used was excessive because small bursts of pepper spray are not considered excessive when an inmate refuses to obey orders. Danley, 540 F.3d at 1308. Therefore, Defendant Davis is entitled to summary judgment because no reasonable jury could find Defendant Davis violated Plaintiff's constitutional rights by failing to intervene.[6]

Even if the Court were to construe Plaintiff's claim against Defendant Davis as an excessive force claim based on Davis' own spraying of pepper spray, no reasonable jury could find Defendant Davis applied force maliciously and sadistically during the incident. Applying the first factor, the need for force, weighs against finding a constitutional violation because the

---

[6]  Based on the allegations in Plaintiff's Complaint, it is unclear whether Plaintiff's failure to intervene claim would include Defendant Shuemake's threat of putting a taser in the tray flap. If it does, the threatened use of a taser would not amount to a sufficient underlying use of excessive force. Crenshaw, 556 F.3d at 1294. The sole threat of putting a taser through the tray is a very minor use of force, if force at all, which was proportionate to the inmates' repeated failure to come to the door even after multiple bursts of pepper spray were discharged.

11

undisputed evidence shows Plaintiff and his cellmate defied orders to come to the cell door to be handcuffed. Danley, 540 F.3d at 1307 ("Under the first factor, '[t]he need for the use of force [was] established by the undisputed evidence that [the inmate] created a disturbance." (quoting Bennett, 898 F.2d at 1533)). At the point Defendant Davis discharged pepper spray into the cell after the unidentified officer, the inmates had been disobeying orders for several minutes. Video at 3:50–7:40. This shows force was even more necessary at this point during the incident to get the inmates to comply. The second factor, the relationship between the need for force and the amount of force used, also weighs against finding a constitutional violation. Short bursts of pepper spray are "not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." Id. (collecting cases). The third factor, the extent of Plaintiff's injury from the use of pepper spray, does not weigh in Plaintiff's favor. Pepper spray "is designed to disable a suspect without causing permanent physical injury. Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle . . . ." Vinyard, 311 F.3d at 1348. In his deposition, Plaintiff recognized he suffered from the typical after-effects from pepper spray, which included burning eyes, nose, lungs, and skin. Doc. 64-3 at 6. Plaintiff stated these effects only lasted about eight to ten hours, along with some eyesight issues that dissipated a couple of weeks later. Id.

  The fourth factor, the extent of the threat to the safety of staff and inmates, also weighs against finding a constitutional violation. As discussed, Plaintiff created a disturbance by refusing to obey orders which warranted the use of minor pepper spray. Danley, 540 F.3d at 1308. As reasonably perceived by Defendant Davis on the basis of facts known to him, Defendant Davis saw the threat posed by Plaintiff and his cellmate by refusing to comply. Pearson, 665 F. App'x at 863. The final factor, any efforts made to temper the severity of the

forceful response, also weighs against Plaintiff.  Viewing the incident as a whole, Plaintiff and his cellmate were given ample opportunities to comply with orders.  After each round of spray, the orders were repeated and the inmates were given additional time to comply with them.  By the time Defendant Davis administered pepper spray, the inmates were permitted multiple opportunities to follow instructions and avoid additional spray but failed to do so.  Furthermore, once the inmates complied and put their hands in the tray flap, the inmates were immediately removed from the cell and escorted to the medical unit.  See Danley, 540 F.3d at 1308 (finding pepper spray use excessive force when jailers confined inmate to small cell and did not permit adequate decontamination).  Thus, no reasonable jury could find Defendant Davis acted maliciously and sadistically when he discharged pepper spray into the cell.

As explained above, Plaintiff was directed to file a response to Defendants' Motion, but he failed to do so.  Therefore, the undisputed material facts set forth in Defendants' Statement of Material Fact, and which are supported by the record, are deemed admitted.  Plaintiff did provide certain witness statements along with his Amended Complaint.  Given Plaintiff did not file a proper response, the Court is not required to consider these statements at this stage.  Even considering the witness statements, they do not create a genuine dispute of material fact as to the claim against Defendant Davis.

Kevin Boyd, presumably another inmate at GSP, states he heard Plaintiff yelling, "I ain't did shit to get [sprayed]!"  Doc. 9-1 at 11.  Boyd then states he heard a taser, and Plaintiff said, "I been said I'll cuff up!"  Id.  Inmate Dino Toland also submitted a statement in which he states, "I was next door to cell #25 in cell #24 when Inmate Toles was sprayed and tasered, by Lt. Shuemake and Sgt. Davis I didn't see it, but I heard the inmate screaming 'I'll cuff up so why are you tasing and spraying me, I'm not resisting.'"  Id. at 13.  Other witness statements submitted

state Plaintiff asked what he did wrong while the pepper spray was being discharged.  Id. at 15–20.  These witness statements do not create a genuine dispute of material fact as to the failure to intervene claim against Defendant Davis because Plaintiff admitted in his own deposition he did not follow Defendant Shuemake's instructions to come to the door to be cuffed.  Doc. 64-3 at 5.  Instead, Plaintiff and his cellmate did the opposite and ran to the back of the cell away from the door.  Doc. 64-3 at 5.  Although Plaintiff may have stated he was not resisting, would cuff up, or did not understand what he did wrong, these statements do not change the fact he did not actually comply with the orders given by Defendant Shuemake.  See Danley, 540 F.3d at 1307 ("And prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out.").  Plaintiff does not dispute that once they complied with this order, the pepper spraying ceased, and they were promptly removed from the cell.  Additionally, Plaintiff has not disputed Defendant Davis did not know any specifics about the situation other than the inmates had disobeyed orders to come to the door to be cuffed.  As explained, the use of pepper spray would have appeared proportional from Defendant Davis' perspective based on the facts known to him at that time.

For these reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment regarding Plaintiff's claim against Defendant Davis.

C.  **Deliberate Indifference**

In Plaintiff's deliberate indifference claims against Defendants Davis and Shuemake, he alleges these Defendants forced him to leave the medical unit prematurely and refused to provide him a decontamination shower.  Doc. 13 at 13–14.

### *1.     Legal Standard.*

The United States Supreme Court has interpreted the Eighth Amendment Cruel and Unusual Punishment Clause to prohibit "deliberate indifference to serious medical needs of prisoners." Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)).  To prove a deliberate indifference to medical treatment claim, a plaintiff must demonstrate: (1) a serious medical need; (2) deliberate indifference to the need; and (3) a causal connection between the constitutional violation and plaintiff's injury.  Id.  The first element is an objective inquiry.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id.  (quotation and citation omitted).

The second element is a subjective inquiry.  Id.  To show defendants' deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) a disregard of that risk; (3) by conduct that is more than mere negligence."  Melton, 841 F.3d at 1223.  Conduct that is more than mere negligence can include grossly inadequate care, a decision to take a less effective but easier course of treatment, or completely cursory medical care that amounts to no treatment at all.  Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  However, non-medical prison officials are typically entitled to rely upon the judgment of medical professionals responsible for prisoner care.  See, e.g., Williams v. Limestone County, 198 F. App'x 893, 897 (11th Cir. 2006) (finding supervisory prison officials are entitled to rely upon medical professionals); Clark v. Sheffield, 807 F. App'x 910, 917 (11th Cir. 2020) ("But neither Sheffield nor Barrentine are trained medical professionals, nor did they have any roles in Clark's examinations or course of treatment."); Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991),

*vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom.* Howell v. Burden, 12 F.3d 190 (11th Cir. 1994) ("We do not dispute Burden's right to rely on medical professionals for *clinical* determinations."); Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands); Cameron v. Allen, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) ("The law does not impose upon [jailers] a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.").

### 2. *Defendant Davis.*

Defendants argue Defendant Davis cannot be held responsible for any failure to treat the effects of the pepper spray because he did not have any further interaction with Plaintiff after the inmates were removed from the cell. Doc. 64-1 at 10. It is undisputed Defendant Davis escorted his cellmate to the medical unit and had no further dealings with Plaintiff that day. Thus, no reasonable jury could find Defendant Davis was deliberately indifferent to Plaintiff's medical needs. Plaintiff does not dispute any of the facts supporting this argument and has not filed any response to Defendants' Motion. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment relating to the deliberate indifference claim against Defendant Davis.

### 3. *Defendant Shuemake.*

Defendants first contend the typical after-effects of pepper spray do not amount to a serious medical need. Doc. 64-1 at 9. Defendants also assert Plaintiff cannot prove subjective deliberate indifference because Defendant Shuemake took Plaintiff to the medical unit where no

one told him Plaintiff was in need of a shower.  Id. at 10.  Additionally, Defendants state Plaintiff never requested a decontamination shower.  Id.

At the outset, the Court notes there is absolutely no evidence before it suggesting Defendant Shuemake removed Plaintiff from the medical unit prematurely.  The video submitted demonstrates Plaintiff was examined for several minutes.  Video at 15:30–20:30.  Regarding Plaintiff's claim Defendant Shuemake improperly refused him a shower, Defendant Shuemake was entitled to rely on the advice given by professionals in the medical unit.  Williams, 198 F. App'x at 897; Spruill, 372 F.3d at 236.  Plaintiff does not dispute no one in the medical unit instructed Defendant Shuemake to give Plaintiff a shower.

Because Plaintiff has not responded to Defendant's Motion for Summary Judgment, he has admitted to Defendants' statement of facts, which includes, "Inmate Toles did not request to be taken to the showers," under this Court's Local Rules.  Doc. 64-2 at 3; Local R. 56.1.  However, Plaintiff does state in his deposition he specifically asked for a shower when taken to the strip cell and Defendant Shuemake denied his request.  Doc. 64-3 at 6–7.  The video does not demonstrate Plaintiff made such a request.  Video at 15:30–24:25.  Even so, this statement is insufficient to create a genuine dispute of material fact when no one in the medical unit informed Defendant Shuemake Plaintiff needed a shower.  No reasonable jury could find Defendant Shuemake exhibited subjective deliberate indifference when he escorted Plaintiff to the medical unit immediately after removing him from the cell where he was never told Plaintiff needed a shower.

Therefore, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment as to the deliberate indifference claim against Defendant Shuemake.  Because Plaintiff cannot prove subjective deliberate indifference, the Court declines to address whether Plaintiff

suffered from a serious medical need. Additionally, the Court declines to address whether Defendants are entitled to qualified immunity because Plaintiff cannot prove a constitutional violation by Defendants Shuemake and Davis as to these claims.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment and **DIRECT** the Clerk of Court to enter the appropriate judgment in favor of all Defendants on Plaintiff's claim for injunctive relief, in favor of Defendant Davis on all claims, and in favor of Defendant Shuemake on Plaintiff's deliberate indifference claim.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or any other filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 29th day of July, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA